**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

     Plaintiff,

v.                                    Case No. 08-CR-20208

GERALD MORGAN,

     Defendant.

_____/

### ORDER DENYING DEFENDANT'S "MOTION TO SUPPRESS EVIDENCE"

Pending before the court is Defendant Gerald Morgan's "Motion to Suppress Evidence." The Government responded in opposition. The court conducted a hearing on the motion on July 23, 2008. For the reasons stated below, the court will deny the motion.

### I. BACKGROUND[1]

In August of 2007, Mark Riley moved into an apartment that had been occupied by Defendant for the preceding ten years. Upon moving in, Riley discovered dozens of images of girls who appeared to be between the ages of 6-18 years, with the focus of most of the images being on the area of their genitals. Riley also found a 2007 calendar with handwritten notes listing over twenty events that would normally be associated with large groups of young girls (*e.g.* dance, cheerleading, skating and twirling), a book on taking erotic photographs, handwritten website addresses (e.g. wishinggirls.com/sexx,

---

[1] Background facts are set forth for perspective. The court's review of the sufficiency of a search warrant is limited to the four corners of the affidavit supporting the warrant. *United States v. Frazier,* 423 F.3d 526, 531 (6th Cir. 2005).

www.virginweb.com, alt.sexfetish.tinygirls) and documents specifying Defendant as the resident of the house from 1997-2005.  Ridley contacted the police with this information.

The Michigan State Police determined that about half of the pictures were taken at a park in Carlisle, Ohio.  The owners of the park were contacted, and they identified Defendant as one of the photographers at an event at the park about ten years earlier.  The State Police also learned that the Defendant had been convicted in 1996 of a criminal offense involving the use of a hidden camera to look up the skirt of a twelve year-old and an eight year-old girl.  Using this information, the Michigan State Police obtained a search warrant from Lenawee County Circuit Judge Timothy Pickard for Defendant's new residence on Franklin Street in Clinton, Michigan.

Execution of the search warrant revealed additional child pornography and firearms.  Officers found nine guns at the house, computers, VHS tapes, CD-Roms, Hi-8 tapes, photographs, negatives, and other material purportedly containing child pornography.  Thereafter, Defendant was charged with possession of child pornography and possession of a firearm by a convicted felon.

Defendant challenges the validity of the warrant, arguing that the affidavit failed to provide probable cause to search.  In addition, Defendant argues that the "good faith exception" is not applicable to this case because State Trooper Dan Thomas should have known the affidavit filed in support of the search warrant was deficient and thus, his reliance on the search warrant was unreasonable.

## II. DISCUSSION

### A. The Affidavit Established Probable Cause

#### 1. Standard

The United States Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized." U.S. Const. amend. IV. The Fourth Amendment also "requires that probable cause be determined by a neutral and detached magistrate." *United States v. Smith*, 182 F.3d 473, 476 (6th Cir. 1999) (*quoting Johnson v. United States*, 333 U.S. 10, 14 (1948)). "Probable cause for a search warrant is defined as reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion." *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006) (*quoting United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)). "The probable cause requirement . . . is satisfied if the facts and circumstances are such that a reasonably prudent person would be warranted in believing that an offense had been committed and that evidence thereof would be found on the premises to be searched." *United States v. Trujillo*, 376 F.3d 593, 603 (6th Cir. 2004) (*quoting Greene v. Reeves*, 80 F.3d 1101, 1106 (6th Cir. 1996)). Thus, "only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause." *Id.* at 603 (*quoting United States v. Davidson*, 936 F.2d 856, 860 (6th Cir.1991)). Furthermore, an affidavit supporting a search warrant need not establish beyond a reasonable doubt that incriminating evidence will be found at the place to be searched.

*United States v. Savoca*, 739 F.2d 220, 224 (6th Cir. 1984) (citing *Illinois v. Gates*, 462 U.S. 213, 235 (1983)).

The Sixth Circuit requires the reviewing court to "accord the magistrate's determination great deference." *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (citations omitted). A "magistrate's discretion should only be reversed if it was arbitrarily exercised," *id.,* although "[d]eference to the magistrate . . . is not boundless." *United States v. Leon*, 468 U.S. 897, 914 (1984). The Fourth Amendment requires "the issuing magistrate . . . simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Terry*, 522 F.3d 645, 648 (2008) (*quoting Gates*, 462 U.S. at 238). The probable cause determination focuses upon whether there is a substantial *chance* of criminal activity, "not an actual showing of such activity." *Smith*, 182 F.3d at 477 (*citing Gates*, 462 U.S. at 244) (emphasis added).

## 2. The Affidavit

The affidavit in support of this warrant recited, among other things, that

- on August 14, 2007, the affiant State Trooper had received from Mark Riley approximately 126 photo images of what appeared to be 37 different females;

- the photos were discovered by Mr. Riley on or about August 6, 2007, when he moved into the rental premises on Gibson Highway in Britton, Michigan; Riley had taken possession of the house in which the materials were found from the previous tenant, Gerald Allen Morgan, who had been the tenant at that location for the previous ten years, according to the home's owner;

- the affiant believed the females pictured to range in age from 6 to 18 years of age;

4

- many of the photos depicted females "with their underwear[-] covered vaginal areas exposed, with focus on the genital area;"

- included among the photos were eight of one female who had long brown hair and braces, photos of whom "showed her exposed genital area," and seven of a different female with blonde hair and green eyes, the photos of whom also "showed her exposed genital area;"

- both of these females appeared to be "minors of an age below 17 years;"

- all the photos were dated from 1983 to 1998;

- a current-year calendar was found and turned over by Mr. Riley that contained handwritten notes that "identified specific dates of approximately 20 dance, cheerleading, skating and twirling events;"

- 66 of the photo images appeared to have been taken at the same recreational park, identified as Silver Lake Beach recreational park in New Carlisle, Ohio;

- the park's owners confirmed that the location of many of the photos was indeed that park, including the seven photos of the blonde female with green eyes, although they could not identify her;

- the park's owners also confirmed that another person, Eric Singermen, had "coordinated a park photo shoot for young females approximately 10 years before, and identified suspect Morgan as one of Singermen's photographers at the park;"

- on September 13, 2007, an additional box of materials was delivered to affiant by Mr. Riley, including books on hypnosis, a book entitled *How to Take And Sell Erotic Photographs*, and "numerous handwritten notes of internet sites" including some with names portions of which were suggestive of child pornography, e.g., "pictures.erotic,child.female," "virginweb," "sex.fetish.tinygirls," among others;

- the box also contained papers with defendant Morgan's name and address.

- Defendant Morgan was arrested in 1995 in Northville, Michigan, for "placing a hidden camera under the dress of a 12 and an 8 year old

females [sic] during the Victorian Festival," upon which Morgan entered a guilty plea to "one count of felony evesdropping installing a device;"

- the affiant consulted an apparent specialist, "Detective Sergeant Poupard from the Michigan State Police Computer Crimes Unit," who advised the affiant that people who possess or manufacture child pornography "display a very compulsive, repetitive and predictable pattern of behavior." Poupard also stated to the affiant that people who possess and collect these materials do so in a "wide range of mediums including photographs, magazines, computer images, motion pictures, videotapes, books, slides and drawings that are used for self sexual arousal and gratification;"

- Poupard also stated to the affiant that people who possess or manufacture child pornography "often correspond with and/or meet others to share information and materials and rarely destroy correspondence from other child pornographers . . . often maintaining lists of names, addresses, and telephone numbers of individuals with whom they have had contact . . . ."

- the affiant detected a "strong encrypted wireless internet signal" from "the street in front of suspect Morgan's house.

The affidavit concluded with the affiant suggesting, first, that defendant Morgan had shown a "repetitive and predictable pattern of behavior," and that "a search of his residence is likely to provide information that could identify the . . . female with the short blonde hair and green eyes . . . and the female with the long brown hair and braces . . . as well as possibly other victims" and, second, that Defendant Morgan likely continues "to possess/manufacture child pornographic materials at his current address." (Def.'s Resp., Ex. 1.)

### 3. Definition of "Child Pornography"

Under 18 U.S.C. § 2256, "'child pornography' means any visual depiction . . . of sexually explicit conduct, where . . . the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct." 18 U.S.C. § 2256(8)(A).

"[S]exually explicit conduct" includes "lascivious exhibition of the genitals or pubic area of any person." 18 U.S.C. § 2256(2)(a)(v).

Defendant argues that because it is "unclear from Trooper Thomas' description whether the [recovered photographs] depict females with their genital areas covered or exposed . . ., it is impossible to determine whether the photos constitute child pornography." (Def.'s Br. at 6.) The court disagrees.

The relevant statute does not require the depiction of total nudity in order to constitute child pornography. The court is assisted in this conclusion by the Sixth Circuit's reasoned reliance, albeit unpublished, upon the "*Dost* factors" in determining whether a particular photograph contains "lascivious exhibition of the genitals or pubic area of any person" under 18 U.S.C. § 2256. *United States v. Campbell*, 81 F. App'x 532, 536 (6th Cir. 2003)[2] (citing *United States v. Dost*, 636 F.Supp. 828, 832 (S.D. Cal. 1986); *Doe v. Chamberlin*, 299 F.3d 192, 196 (3d Cir. 2002); *United States v. Amirault*, 173 F.3d 28, 32-35 (1st Cir.1999); *United States v. Wolf*, 890 F.2d 241, 244-46 (10th Cir.1989); *United States v. Rubio*, 834 F.2d 442, 448 (5th Cir.1987)). The *Dost* factors are:

> (1) whether the focal point of the visual depiction is on the child's genitalia or pubic area; (2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity; (3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child; (4) whether the child is fully or partially clothed, or nude; (5) whether the visual depiction

---

[2]Unpublished decisions in the Sixth Circuit are not binding precedent, *Sheets v. Moore*, 97 F.3d 164, 167 (6th Cir. 1996) (holding that unpublished opinions "carry no precedential weight [and] . . . have no binding effect on anyone other than the parties to the action"), but their reasoning may be "instructive" or helpful, *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 593 (6th Cir. 2004).

suggests sexual coyness or a willingness to engage in sexual activity; and (6) whether the depiction is intended or designed to elicit a sexual response in the viewer.

*Id.*

The list is not exhaustive, "and an image need not satisfy every factor to be deemed lascivious. Rather, along with any other relevant criteria, including the age of the child, these factors provide a framework for analyzing the image in its entirety." *Id.* (internal citations omitted). Contrary to Defendant's argument, courts have found materials to be "sexually explicit" even where the minors were not completely nude. *See id.* at 536 ("Those not completely nude are found wearing lingerie or stockings and garters-inappropriate attire for girls of their age. Many of the depictions are sexually suggestive, with girls posing unnaturally, prompting focus on the genital area. Moreover, most of the images seem intended to elicit a sexual response in the viewer. "); *United States v. Knox*, 32 F.3d 733, 744 (3rd Cir. 1994) ("The genitals or pubic area need not be fully or partially nude in order to be shown or put on display."). Thus, the fact that the genital areas of some or even all of the females depicted in the photographs were covered does not mean that the photographs did not constitute "child pornography."

### 4. Analysis

The relevant materials were retrieved from an apartment where Defendant had resided for a decade, and they were found in conjunction with defendant's personal information. Especially as seen in the light of "how-to" books, instructions and notations of child-sex oriented websites, these photographic images appear highly suggestive of possession and production of child pornography. Indeed, as the court found in *Knox,* the descriptions of the photographs support a finding of child pornography, where the

focus of the photographs was lascivious and directed at the genital area. *Knox*, 32 F.3d at 745 ("Although the genitals are covered, the display and focus on the young girls' genitals or pubic area apparently still provides considerable interest and excitement for the pedophile observer . . . . Thus, the scantily clad genitals or pubic area of young girls can be 'exhibited' in the ordinary sense of that word . . .").

Moreover, it is not entirely clear in the affidavit that all the photographs depicted a focus upon covered, i.e., "underwear[-] covered," genital areas. As specified in the instances of the girl with long brown hair and braces and the girl with blonde hair and green eyes, both "showed [the] exposed genital area." Whether exposed or covered, the reviewing magistrate was entitled to conclude that the photographs depicted a salacious focus upon the genitalia or the genital area of underage females. Finally, a magistrate's conclusion that evidence of criminal activity would likely be found in a search of the Defendant's new residence does not require "an actual showing of such [criminal] activity", *Smith*, 182 F.3d at 477 (*citing Gates*, 462 U.S. at 244), but only the requisite probable cause to search for such evidence.

In the further light of Defendant's mid-1990's felony conviction for using a hidden camera to take photographs "under the dress" of two young girls at a festival, the photographs, dating to (as late as) the late 1990s at Silver Lake Park, appear contemporaneous with defendant's felonious photo-surveillance activities at the Victorian Festival. These somewhat-dated events were brought to the current day, *i.e.*, mid-2007, with the discovery of the 2007 calendar with handwritten notes pinpointing over 20 events which would be expected to attract groups of young girls and with the opinions of Detective Sergeant Poupard that one who collect or creates such

pornographic materials will often display a "compulsive, repetitive and predictable pattern of behavior," and that he will "rarely destroy correspondence from other child pornographers . . . often maintaining lists of names, addresses, and telephone numbers of individuals with whom they have had contact."

Defendant argues that evidence of the handwritten calendar notes are not "inherently indicative of criminal activity." While this statement is undeniably true when taken in isolation, its truth does not negate probable cause. Even if possible "innocent explanations for some or all of these facts may exist, this possibility does not render the determination of probable cause invalid." *Terry*, 522 F.3d at 649 (*quoting United States v. Martin,* 289 F.3d 392, 400 (2002)).

Similarly, the existence of a strong encrypted wireless internet signal detected near defendant's Franklin Street address gives at least some reason to believe Defendant could be continuing in his "repetitive, compulsive behavior." The existence of an encrypted internet signal might have an innocent explanation –indeed, the court supposes that, depending on the housing density in that neighborhood, it might even have emanated from elsewhere– but when coupled with handwritten notations of various internet website addresses suggestive of sex with or upon children ("pictures.erotic,child.female," "virginweb," "sex.fetish.tinygirls"), the strong encrypted internet signal is one fact that further tends to support a finding of probable cause.

In determining the sufficiency of the affidavit supporting the search warrant, the reviewing court should proceed in "a commonsense-rather than a hypertechnical-manner, and the court should consider whether the totality of the circumstances supports a finding of probable cause, rather than engaging in line-by-line

scrutiny." *Trujillo*, 376 F.3d at 602 (quoting *United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004)). Here, the totality of the circumstances convince the court that the reviewing magistrate could easily conclude that Defendant had left behind salacious materials and was the kind of person who had a long-standing affinity for pornographic images of very young females. He could reasonably conclude that probable cause existed to search Defendant's Franklin Street home for evidence of ongoing activity as reflected in the 2007 calendar mark-ups and comments. He could conclude that evidence of the identity of one or more of the girls photographed in Ohio with the genitals (or genital areas) exposed might be located and secured.

Deference is afforded to a magistrate's determination of probable cause, and will only be reversed if arbitrarily exercised. *Allen*, 211 F.3d at 973. Given the facts outlined above, the magistrate had, at least, "a substantial basis for ... concluding that a search would uncover evidence of wrongdoing." *Id.* (alterations and quotations omitted). The determination was not arbitrary. The search warrant was validly approved.

### B. The *Leon* Good-Faith Exception Applies

Even if the court were to agree with Defendant's argument that sufficient probable cause was not presented in the affidavit to justify a search of Defendant's home, and that the magistrate's determination to issue the search warrant was therefore invalid, the court would nonetheless deny Defendant's motion to suppress under the *Leon* good-faith reliance standard.

### 1. Standard

"When evidence is obtained in violation of the Fourth Amendment, the judicially

11

developed exclusionary rule usually precludes its use in a criminal proceeding against the victim of the illegal search and seizure." *Illinois v. Krull*, 480 U.S. 340, 347 (1987). Nonetheless, court should not suppress "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant." *United States v. Leon*, 468 U.S. 897, 922 (1984). The "good-faith exception" to the exclusionary rule applies unles it is clear that the officer searching on the strength of that warrant had "no reasonable grounds for believing that the warrant was properly issued." *Id.* at 923. Thus, an officer could not "manifest objective good faith in relying on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *United States v. Carpenter,* 360 F.3d 591, 595 (6th Cir. 2004) (quoting *Leon*, 468 U.S. at 922).

## 2. Analysis

Defendant argues that the *Leon* good faith exception should not apply because Trooper Thomas's reliance on the warrant was unreasonable. In support of his argument, Defendant asserts principally that because probable cause did not exist, Trooper Thomas's reliance on the warrant must have been unreasonable. The court disagrees.

There is no evidence, or even assertion, that Trooper Thomas "gave a knowingly false affidavit or otherwise acted in bad faith." *United States v. Schultz,* 14 F.3d 1093, 1098 (6th Cir. 1994). As in *Schultz*, "[t]he warrant was issued by a proper authority, and there is no evidence that the issuing magistrate had abandoned his neutral judicial role." *Id.*

Secondly, while it is true that "a warrant 'so lacking in indicia of probable cause

as to render official belief in its existence entirely unreasonable' may be suppressed even when . . . the warrant is facially valid and there is no evidence of bad faith or a biased magistrate," *id.* (quoting *Leon*, 468 U.S. at 923), the warrant at issue in this case was not in any way "so lacking" in specificity and detail so as to render the *Leon* good-faith exception inapplicable.

Defendant appears to imply, although he does not well explain, that unless an affidavit has explicit, detailed descriptions of existing criminal wrongdoing, it constitutes a "bare bones" affidavit upon which the officer may not properly rely.

Defendant does not identify the correct standard in this regard. The Supreme Court has given as a definition of a "bare bones" affidavit one containing "a mere conclusory statement that gives the magistrate virtually no basis at all for making a judgment regarding probable cause." *Gates,* 462 U.S. 239. A "bare bones" affidavit is similar to, if not the same as, a conclusory affidavit. It is "one which states 'only the affiant's belief that probable cause existed.' " *United States v. Finch,* 998 F.2d 349, 353 (6th Cir.1993) (quoting *United States v. Ciammitti,* 720 F.2d 927, 932 (6th Cir.1983)). The Supreme Court in *Gates* pointed to *Aguilar v. Texas,* 378 U.S. 108 (1964), in which the affidavit stated only that the affiants had "received reliable information from a credible person and believe that heroin is stored in a home" *Id.* An affidavit is not necessarily "bare bones" under *Gates* merely because it may lack explicitness of detail or when some statements of unidentified informants remain uncorroborated.

The instant affidavit, against this standard, was far from "bare bones." It was, in fact, richly detailed, explicitly specific and brought to the magistrate a wide array of evidence culled from Defendant's former residence that after the Ohio investigation and

with the help of Detective Sergeant Poupard's specialized knowledge, became an understandable, well-corroborated body of evidence that came into focus as providing strong indications of the likely continuation of criminal child pornographic activity.

Trooper Thomas's reliance on the warrant was held in good faith, and was reasonable.

### III. CONCLUSION

For all of these reasons, in addition to those stated on the record, Defendant's "Motion to Suppress Evidence" [Dkt. # 15] is DENIED.

s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  August 21, 2008

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, August 21, 2008, by electronic and/or ordinary mail.

s/Lisa G. Wagner
Case Manager and Deputy Clerk
(313) 234-5522